# United States Court of Appeals
## For the First Circuit

---

No. 22-1938

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Plaintiff, Appellant,

v.

ZURICH AMERICAN INSURANCE COMPANY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

---

Before

Kayatta, Selya, and Howard,
Circuit Judges.

---

Marshall N. Gilinsky, with whom Ethan W. Middlebrooks, Jade W. Sobh, and Anderson Kill, P.C. were on brief, for appellant.

Andrew L. Margulis, with whom Ropers Majeski PC was on brief, for appellee.

---

August 9, 2023

---

**SELYA**, **Circuit Judge**. With $15,000,000 in coverage at stake, this case requires us to apply Massachusetts law to determine the effect of a failure to give notice as specified in an excess insurance policy affording coverage on a "claims made and reported" basis. Where, as here, a federal court sits in diversity jurisdiction, tasked with following state law, it is not free to innovate but, rather, must apply state substantive rules of decision as those rules have been articulated by the state's highest tribunal. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938); see also Torres-Ronda v. Nationwide Mut. Ins. Co., 18 F.4th 80, 84 (1st Cir. 2021).

In this instance, the Massachusetts Supreme Judicial Court (SJC) has spoken directly to the critical issue. See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 29-30 (Mass. 1990); see also Tenovsky v. All. Syndicate, Inc., 677 N.E.2d 1144, 1145-46 (Mass. 1997). What is more, this court — on no fewer than four occasions — has recognized the Massachusetts rule. See Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 49-51 (1st Cir. 2009); DiLuglio v. New England Ins. Co., 959 F.2d 355, 358 (1st Cir. 1992); Nat'l Union Fire Ins. Co. v. Talcott, 931 F.2d 166, 167-69 (1st Cir. 1991); J.I. Corp. v. Fed. Ins. Co., 920 F.2d 118, 120 (1st Cir. 1990). Staying within the borders of this well-beaten path, we hold that the failure to give notice according to the policy's terms and conditions forfeits any right to

coverage. Consequently, we affirm the district court's entry of summary judgment in favor of the insurer.

**I**

"Because our review follows the entry of summary judgment, 'we take the facts and the reasonable inferences therefrom in the light most' favorable to the non-moving part[y]." Rivera-Aponte v. Gomez Bus Line, Inc., 62 F.4th 1, 3 (1st Cir. 2023) (quoting Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 730 (1st Cir. 2022)).

For a policy term beginning in November of 2014, the President and Fellows of Harvard College (collectively, Harvard), purchased a one-year liability insurance policy from the National Union Fire Insurance Company of Pittsburg, Pennsylvania, a member company of the American International Group, Inc. (AIG). The policy covered litigation costs in the event a claim was brought against Harvard, as well as the payment of liabilities incurred as the result of a judgment or settlement, up to the amount of $25,000,000. Because the AIG policy provided "claims-made coverage," it required prompt notice of any claim filed against Harvard. Specifically, the policy stated that:

> The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured . . . as soon as practicable . . . .
>
> Notwithstanding the foregoing, the Insured shall not be required to give written

> notice of a Claim until the earliest occurrence of the following:
>
> (i) the Claim is or is sought to be certified as a class action; or
>
> (ii) total Loss (including Defense Costs) of the Claim is reasonably estimated by the Organization's General Counsel or Risk Manager (or equivalent position) to exceed 50% of the applicable retention amount for such Claim;
>
> provided, however, that in all events, all Claims, including Claims described in (i)-(ii) above, must be reported to the Insurer no later than ninety (90) days after the end of the Policy Period or the Discovery Period (if applicable).

In addition to the AIG policy, Harvard purchased a secondary excess policy from Zurich American Insurance Co. (Zurich) to insure against an additional $15,000,000 in costs should a claim exhaust the AIG coverage. In its reporting and notice conditions, the excess policy provided: "As a condition precedent to exercising any rights under this policy, the Policyholder shall give the Underwriter written notice of any claim or any potential claim under this policy or any Underlying Insurance in the same manner required by the terms and conditions of the [AIG] Policy."

Under both policies, then, securing coverage for a claim required — in all events — the reporting of that claim to the insurer within ninety days of the end of the policy period. As both AIG's primary policy and Zurich's excess policy provided coverage from November 1, 2014, to November 1, 2015, any claim

that was made against Harvard during that period had to be reported no later than January 30, 2016.

On November 17, 2014, an organization known as Students for Fair Admissions sued Harvard in federal court for violating Title VI of the Civil Rights Act of 1964. What followed was a legal odyssey that spanned nearly a decade and culminated in proceedings before the Supreme Court. See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.), 397 F. Supp. 3d 126 (D. Mass. 2019), aff'd sub nom. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 980 F.3d 157 (1st Cir. 2020), rev'd, 143 S. Ct. 2141 (2023).

On November 19, 2014 — in anticipation of the legal costs to come — Harvard notified AIG of the pending suit, thereby securing coverage under the primary policy. Harvard neglected, though, to notify Zurich of the suit until May 23, 2017 — well outside the excess policy's ninety-day notification window. Consequently, Zurich denied coverage under the excess policy on the ground that Harvard had failed to furnish timely notice.

In September of 2021, Harvard invoked diversity jurisdiction, see 28 U.S.C. § 1332(a), and sued Zurich in the United States District Court for the District of Massachusetts. Harvard's complaint sought both declaratory relief and damages for breach of contract. Zurich disclaimed liability, arguing that

Harvard had forfeited any entitlement to coverage. In due course, Zurich moved for summary judgment. See Fed. R. Civ. P. 56(a). Asserting that such a motion was premature and that further discovery was needed, Harvard opposed summary judgment and moved for leave to undertake, and to compel production of, additional discovery. See Fed. R. Civ. P. 56(d), 37(a). After considering the parties' proffers and entertaining oral argument, the district court granted summary judgment in favor of Zurich and denied Harvard's discovery-related motions as moot. This timely appeal ensued.

## II

"We review a district court's grant of summary judgment de novo." Minturn v. Monrad, 64 F.4th 9, 13 (1st Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the claims under consideration are in a federal court by virtue of diversity jurisdiction, see 28 U.S.C. § 1332, we look to the relevant state law — here, Massachusetts law — to supply the substantive rules of decision, see Minturn, 64 F.4th at 14.

In this venue, Harvard fashions two arguments as to why Zurich was not entitled to summary judgment. First, Harvard contends that the district court misapplied Massachusetts law when it determined that strict compliance with the excess policy's

notice requirement was a prerequisite to coverage. Then — as a fallback — Harvard proposes an alternative interpretation of the notice requirement and contends that issues of material fact remain as to whether that requirement was satisfied. Both contentions lack force.

**A**

Massachusetts courts generally hew to the rule that an insurance contract is to be enforced according to the plain meaning of its terms. See Somerset Sav. Bank v. Chi. Title Ins. Co., 649 N.E.2d 1123, 1127 (Mass. 1995). To be sure, there is an exception when an insured fails strictly to adhere to a notice requirement in an occurrence-based policy.[1] See Johnson Controls, Inc. v. Bowes, 409 N.E.2d 185, 186-88 (Mass. 1980). In that circumstance, the insurer is required to prove not only that the notice requirement was breached, but also that the breach prejudiced its position. See id. The SJC has explained that this largess is warranted because the purpose of the notice requirement in an occurrence-based policy is to afford the insurer an opportunity promptly to investigate facts pertaining to liability; when that

[1] An occurrence-based policy provides coverage for events that occur during the policy period, regardless of when a claim is brought against an insured. See Chas. T. Main, Inc., 551 N.E.2d at 29. By contrast, a claims-made policy — such as the excess policy that is front and center here — covers claims made against the insured during the policy period, regardless of when the event or act that instigated the claim occurred. See id.

investigation can still effectively be made, and the insurer is not in any other way prejudiced, forfeiture of coverage based on technical non-compliance with the notice requirement results in unfairness to the insured. See id. at 187-88.

But not all liability insurance policies are on an equal footing, and the "no harm, no foul" principle does not apply to failures to give timely written notice under claims-made insurance policies. In Massachusetts, notice provisions of claims-made policies — which require that notice of a claim be given by the end of the policy period or a defined period ending shortly thereafter — are of the essence of those policies. Those provisions are intended not merely to facilitate an investigation into the facts underlying a claim but also — just as importantly — to promote fairness in rate setting. See Chas. T. Main, 551 N.E.2d at 29-30. As the SJC has explained:

> The purpose of a claims-made policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period. If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists. Prejudice for an untimely

> report in this instance is not an appropriate inquiry.

Id. at 30. Under Massachusetts law, then, an insurer is not required to show prejudice before denying coverage due to an insured's failure to comply with the notice requirement of a claims-made policy. See id.; see also Tenovsky, 677 N.E.2d at 1146.

Where state law controls and the state's highest court has plainly articulated that law, a federal court must follow suit. Thus, we have unswervingly applied this clear rule regarding the failure to give timely notice as it has been spelled out by the SJC. See Gargano, 572 F.3d at 51 ("To require the insurer of a 'claims made and reported' policy to demonstrate prejudice from the insured's failure to report a claim within the relevant policy period 'would defeat the fundamental concept on which claims-made policies are premised[]' . . . ." (quoting Chas. T. Main, Inc., 551 N.E.2d at 30)); Nat'l Union Fire Ins. Co., 931 F.2d at 168 ("[I]n order for an insurer to be entitled to deny coverage under a 'claims made' policy, it must only show that the insured did not report the claim within the same policy year in which he received notice of it; no showing of prejudice need be made."); J.I. Corp., 920 F.2d at 120 (similar); see also DiLuglio, 959 F.2d at 358 (explaining Massachusetts rule while discussing Rhode Island law). In the absence of supervening authority — and we discern none here

— we are duty-bound to continue to apply the SJC's clear rule. See Torres-Ronda, 18 F.4th at 84.

The parties do not dispute that Harvard purchased a claims-made policy from Zurich. Nor do they dispute that Harvard failed to provide Zurich with written notice until May of 2017 — long after the deadline stipulated in the policy had passed. Consequently, Zurich had every right to deny coverage based on a lack of timely notice. See Chas. T. Main, 551 N.E.2d at 30.

Harvard resists this conclusion. It argues that if Zurich had actual notice of the pending lawsuit (a fact that Harvard asserts might be established through further discovery), then the rate-setting purpose that animated the excess policy's notice requirement would have been satisfied and a denial of coverage for want of timely written notice alone would be contrary to Massachusetts law. In Harvard's view, the SJC's holding in Chas. T. Main does not apply to circumstances in which an insurer has actual notice of a claim and can use that information to set its rates, notwithstanding the insured's failure to comply with the policy's notice requirement. But this is little more than gaslighting. Arguing that the policy's notice requirement should not be enforced because Zurich may have had actual notice of the claim is simply another way of arguing that Zurich was not prejudiced by the lack of timely written notice. To honor such an argument would impermissibly collapse the critical distinction

that the SJC has made between occurrence-based and claims-made policies.[2]

Harvard's argument that Chas. T. Main is factually distinct because the insurer in that case had no actual knowledge of the claim is equally unpersuasive. Harvard places great emphasis on the SJC's statement that "[i]f a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated." Id. This statement, though, resides within a discussion that addresses not the specific facts of that case but, rather, why the purpose underlying notice provisions in claims-made policies differs from that underlying the notice provisions in occurrence-based policies. Premised on that discussion, the SJC promulgated a general rule that an insurer need not demonstrate prejudice before denying coverage under a claims-made policy for the insured's failure to provide timely notice. See id. at 29-30. Nothing in Chas. T. Main suggests that the SJC meant to carve out an exception to that general rule for circumstances in which an insurer had actual notice of a pending

[2] We think it more than a coincidence that most of the cases cited by Harvard in support of this argument address notice provisions in occurrence-based policies. See, e.g., Boyle v. Zurich Am. Ins. Co., 36 N.E.3d 1229, 1233, 1236 & n.8 (Mass. 2015); Augat, Inc. v. Liberty Mut. Ins. Co., 571 N.E.2d 357, 358 (Mass. 1991); Darcy v. Hartford Ins. Co., 554 N.E.2d 28, 29-30 (Mass. 1990).

claim against an insured. And we would be straying well outside our assigned lane to read such an exception into Massachusetts law.

There is one further point. Harvard — which could have sued in a Massachusetts court and argued for a modification of that state's substantive law — opted instead to avail itself of a federal forum. As we have admonished in earlier cases, a plaintiff "who made a deliberate choice to sue in federal court rather than in a [Massachusetts] state court[] is not in a position to ask us to blaze a new trail that the [Massachusetts] courts have not invited." Jones v. Secord, 684 F.3d 1, 11 (1st Cir. 2012).

With its legal arguments encountering strong headwinds, Harvard pivots. It contends that to enforce the notice requirement in Zurich's excess policy would contravene sound public policy. Opportunistic insurers would be incentivized, Harvard insists, to draft convoluted notice provisions in the hope of duping customers into defaulting on their coverage. Whatever the merits of this contention — and we take no position on it — it is for Massachusetts courts, not for a federal court, to weigh the policy implications of Massachusetts law. Cf. Gattineri v. Wynn MA, LLC, 63 F.4th 71, 94 (1st Cir. 2023) (certifying question to SJC when issue before court involved "important questions of state law and public policy with significant implications"). In diversity cases, we are followers: we must apply clear rules of law as those rules have

been articulated by the highest court of the relevant state. See Torres-Ronda, 18 F.4th at 84.

That ends this aspect of the matter.[3] At bottom, "[i]t was [Harvard's] responsibility to understand the type of coverage [it] purchased . . . , and we are not at liberty to rewrite either the policy or Massachusetts law to conform to [Harvard's] expectations." Gargano, 572 F.3d at 51. Accordingly, Harvard's failure to provide timely written notice under the excess policy resulted in a forfeiture of coverage.

**B**

Harvard has one last page in its playbook. It claims that issues of fact remain as to whether it complied with the excess policy's notice requirement. In this regard, Harvard says — for the first time on appeal — that the policy's notice requirement is ambiguous as to how a claim is to be "reported" to Zurich and that further discovery might reveal that a newspaper or

[3] Harvard argues at length that the district court wrongly relied on two out-of-circuit cases for the proposition that an insurer may deny coverage under a claims-made policy for a lack of formal notice, even if the insurer had actual notice of the claim. See President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co., No. 21-11530, 2022 WL 16639238, at *2 (D. Mass. Nov. 2, 2022) (citing Atl. Health Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 463 F. App'x 162, 167 (3d Cir. 2012); Heritage Bank of Com. v. Zurich Am. Ins. Co., No. 21-10086, 2022 WL 3563784, at *3 (N.D. Cal. Aug. 17, 2022)). Because we find Massachusetts law sufficient to resolve the issue before us, we need not address this argument. See Minturn, 64 F.4th at 14 ("We are not tied to the district court's rationale but, rather, may affirm the judgment on any ground made manifest by the record.").

other media outlet "reported" the claim to Zurich by covering the story for the general public.

This claim of error need not detain us. The sockdolager is that Harvard failed to raise the claim below. "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).

Trying to wriggle off this particularly sharp hook, Harvard maintains that this case presents such "extraordinary circumstances." In support, it cites to our decision in National Ass'n of Social Workers v. Harwood, 69 F.3d 622 (1st Cir. 1995). There, we decided, in an exercise of our discretion, to hear an argument raised by a government actor for the first time on appeal — an argument that was of great public importance and that "touch[ed] upon policies as basic as federalism, comity, and respect for the independence of democratic institutions." Id. at 628. The same cannot be said of this case, which implicates only garden-variety issues of state contract law, over which we are not an authoritative tribunal.[4] See Erie R.R. Co., 304 U.S. at 79

[4] Although we have previously set forth an array of factors to consider when determining the appropriateness of an exception to the raise-or-waive principle, we find this single factor sufficient, under the circumstances, to convince us that an

("Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically authorized or delegated to the United States."); Commonwealth v. Montanez, 447 N.E.2d 660, 661 (Mass. 1983) ("Though we always treat their decisions with deference, we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law."). Thus, we see no sufficient reason for departing from our customary praxis of refusing to consider arguments that were not raised below.

**III**

Although we have found no basis for overturning the district court's entry of summary judgment, a further issue remains: whether the district court erred in denying as moot Harvard's motions to reopen and compel additional discovery. See Fed. R. Civ. P. 56(d), 37(a). We turn to that issue.

We review the denial of a Rule 56(d) motion for abuse of discretion. See Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014). "[T]he district court is entitled to refuse a Rule 56(d) motion if it concludes that the party opposing summary judgment is

---

exception is unwarranted in this case. See Harwood, 69 F.3d at 627-29. In reaching this conclusion, however, we in no way disclaim the utility of those other factors as they might apply in other circumstances.

unlikely to garner useful evidence from supplemental discovery." Id.

In the case at hand, Harvard sought supplemental discovery on the issue of whether Zurich had actual notice of the underlying claim. But any evidence to that effect would have been irrelevant to the summary judgment inquiry. See supra Part II. The dispositive factual issue before the district court was whether Harvard provided timely written notice to Zurich as required by the excess policy — an issue to which the summary judgment record offered a clear answer. Further discovery on the issue of actual notice would have been entirely beside the point.

We need go no further. We hold, without serious question, that it was not an abuse of discretion to deny Harvard's motion to reopen discovery under Rule 56(d). And that denial renders Harvard's motion to compel under Rule 37(a) futile such that it can be denied as moot. See United States v. Rydle, 58 F.4th 14, 17 (1st Cir. 2023).

**IV**

For the reasons elucidated above, the judgment of the district court is

**Affirmed**.